AO 106 (Rev. 04/10) Application for a Search Warrant    AUTHORIZED AND APPROVED/DATE: Blackwell

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

FILED 2/24/25 amg

JOAN KANE, CLERK
U.S. DIST. COURT
BY_____
FEB 24 2025
WESTERN DIST. OKLA
DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. M-25-127-AMG
INFORMATION ASSOCIATED WITH SNAPCHAT )
ACCOUNT "Itzdebb1" THAT IS STORED AT PREMISES )
CONTROLLED BY SNAP, INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A," which is attached and incorporated by reference herein.

located in the ____Central____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B," which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Possession of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252A(a)(2)(A) | Receipt of Child Pornography |

The application is based on these facts:

See attached Affidavit of BIA Agent Brittany Kilmer, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature  #390

BRITTANY KILMER, BIA AGENT
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/24/25

_____
Judge's signature

City and state: Oklahoma City, Oklahoma    AMANDA MAXFIELD GREEN, U.S. MAGISTRATE JUDGE
Printed name and title

M-25-127-AMG

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT "Itzdebb1" THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No. -_____- |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brittany Kilmer, Special Agent with the Bureau of Indian Affairs (BIA), the Affiant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with the Snapchat account "Itzdebb1," (the "TARGET ACCOUNT") that is stored at a premises owned, maintained, controlled, or operated by Snap, Inc., an electronic communications service and/or remote computing service provider headquartered at 2772 Donald Douglas Loop North in Santa Monica, California. The account to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the TARGET ACCOUNT, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2. I have been law enforcement officer for ten years, and worked in the compacity as a Tribal Officer, Police Officer, Deputy Sheriff, and now a Federal Agent. I attended the

Oklahoma Council on Law Enforcement Training ("CLEET") for basic police training. I attended the Federal Law Enforcement Training Center ("FLETC") at the Bridge Indian Police Academy ("IPA") for basic Indian country police officer training. I also attended FLETC for the Department of the Interior Investigator Training Program ("DOI ITP"). For the past 2 and half years, I have been employed with the BIA, Office of Justice Services ("OJS"). I am currently a Special Agent assigned to District II in Oklahoma. My primary duties as a Special Agent are to investigate felony criminal offenses, which occur within the boundaries of the Indian reservations to which I am assigned. During my time as a Special Agent, I have taken part in numerous criminal investigations as the primary investigator or in a backup capacity. I have also received significant training in criminal investigations, including investigations into violent crimes.

   3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information, including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

   4. Based on my training, research, experience, and the facts as set forth in this affidavit, there is probable cause to believe the TARGET ACCOUNT contains evidence of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), Possession of Child

Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A).

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Snap, Inc. from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## SNAPCHAT BACKGROUND

7. Snapchat is a free mobile application made by Snap, Inc. and is available for download through the Apple App Store and Google Play Store. The Snapchat application is used to share information through photos, videos, and chat messages.

8. To use Snapchat, a user must download the mobile application to their mobile device and sign up using their name and date of birth. The user then selects a username and password. Snapchat then requires an e-mail address or phone number to create an account. A user can also create a vanity name.

9. "Snaps" are photos or videos taken using the camera on an individual's mobile device through the Snapchat application, and may be shared directly with the user's friends, in a Story (explained further below), or in a Chat.

10. A Snapchat user can add Snaps to their "Story." A Story is a collection of Snaps displayed in chronological order. Users can manage their privacy settings so that their Story can be viewed by all users, their friends, or a custom audience. A user can also submit their Snaps to Snapchat's crowd-sourced service "Our Story," which enables their Snaps to be viewed by all users in Search and Snap Map.

11. "Snap Map" allows a Snapchat user to see where their friends have been and what is going on around them. A user will not appear on Snap Map until they open it for the first time and choose to share their location. A user can update the people who have access to their location, to include going into "Ghost Mode" to hide their location from everyone. Snaps that have been submitted to Snap Map can show up on the Map. However, most of the Snaps on the Map are selected through an automated process. Snap Map submissions may be stored indefinitely and may be visible on Snapchat for a long period of time.

12. "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. Content saved in Memories is backed up by Snapchat and may remain in Memories until deleted by the user. Users may encrypt their content in Memories, in which case the content is not accessible to Snap, Inc. and cannot be decrypted by Snap, Inc.

13. A user can type messages, send Snaps, audio notes, and video notes to friends within the Snapchat application using the Chat feature. Snapchat's servers are designed to

4

automatically delete one-on-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's Chat settings.

14.     If a Snapchat user has device-level location services turned on and has opted into location services on the Snapchat application, Snap, Inc. will collect location data, which will vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the application settings.

15.     A Snapchat username is a unique identifier associated with a specific Snapchat account, and it cannot be changed by the user.

16.     Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat application. The basic subscriber information entered by a user in creating an account is maintained as long as the user has not edited the information or removed the information from the account.

17.     In addition to the information provided by a user to register an account, Snap, Inc. may retain the account creation date and Internet Protocol ("IP") address.  Snap, Inc. also stores the timestamp and IP address of an account user's logins and logouts.

18.     For each Snapchat user, Snap, Inc. collects and retains the content and other records described above.

19.     Snap, Inc. retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by the sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content. Snap, Inc. may be able to retrieve content of some Snaps.

20.     Videos and photos sent and received as Snaps are accessible to users for only a short period of time. If a screenshot is taken of an image by the recipient, the sender is notified.

Videos cannot be saved by the recipient. Because of the common belief by Snapchat users that videos and photos cannot be retained by recipients, Snapchat is often used to facilitate and document criminal acts.

21. As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion.

22. The stored communications and files connected to the TARGET ACCOUNT may provide direct evidence of the offenses under investigation.

23. In addition, the user's account activity logs, stored electronic communications, and other data retained by Snap, Inc. can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, e-mail and chat logs, documents, and photos and videos (and the data associated with the foregoing, such as location, date, and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. This geographic and timeline information may tend to either inculpate or exculpate the account owner by allowing investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crimes under investigation.

24. Account activity may also provide relevant insight into the account user's state of mind as it relates to the offense under investigation. For example, information on the account

may indicate the user's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25. Other information connected to the use of Snapchat may lead to the discovery of additional evidence and possible victims, as well as the identification of co-conspirators, witnesses, and instrumentalities of the crime under investigation.

26. Therefore, Snap, Inc.'s servers are likely to contain the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat to facilitate and communicate about the crimes under investigation.

27. I have previously requested that Snap, Inc. preserve all records pertaining to the TARGET ACCOUNT from the timeframe of January 1, 2024, to February 6, 2025.

## PROBABLE CAUSE

28. On March 12, 2024, a juvenile Native American Female (hereinafter "MV" for "Minor Victim") was in Ponca Tribal court with her legal guardian Vivian Howe. During Ponca Tribal Court it was discussed that MV was possibly having sexual conversations with an adult male by cellphone. Ponca Tribal Judge Marsha Harlen asked legal guardian, Ms. Howe, if she would surrender MV's cellphone to BIA police so that an investigation of the allegations could begin. Ms. Howe surrendered the cellphone to BIA Police.

29. BIA Lieutenant ("Lt.") Alexander Black reviewed the cell phone and found Facebook messages between MV and Devon WARRIOR (A.K.A. Devon Arkeketa) (DOB: 07/28/2000, Native American Male). In the conversation WARRIOR and MV were discussing being "fuck buddies." In the conversation MV says, "I was talking about being fuck buddies bru and you'll get in trouble if anyone knew you was talking to me. I am 16 and your what 21?"

WARRIOR replies, "Then it stays between us." MV replies, "hmmm?" WARRIOR replies, "We fuck buddies and keep it between us you know. You can say no if you want." WARRIOR goes on asking for MV's Snapchat username. WARRIOR gives MV his username of Itzdebb1.

30. Lt. Black then reviewed the Snapchat conversations between WARRIOR and MV. In their conversation thread, it showed that WARRIOR had saved pictures of MV. The pictures were of MV's breast without clothing. These messages were saved by WARRIOR on February 11, 2024. After seeing there was images of child pornography on the cellphone Lt. Black seized MV's phone as evidence.

31. At the time of this conversation WARRIOR was 23 years old and MV was 16 years old.

32. On October 09, 2024, Special Agent ("SA") Brittany Kilmer and Lt. Black interviewed MV. In that interview MV disclosed that she had been communicating with WARRIOR by cellphone. MV said WARRIOR would text her phone or they would text over apps such as Facebook and Snapchat. MV stated that WARRIOR would ask her to send him nude picture of herself. MV said she would tell WARRIOR no, but after he would ask numerous times, she would give in sometimes and send him nude pictures of herself. Lt. Black asked MV if WARRIOR asked her to have sex with him and she said "yes." MV said WARRIOR asked her, "do you want to fuck?" SA Kilmer asked MV if WARRIOR had ever sent nude pictures of himself to her. MV answered, "yes." MV said that WARRIOR sent "dick pics" (pictures of his penis) to MV. MV told SA Kilmer that WARRIOR tried to make plans with MV to meet up and to have sex with her.

8

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Snap, Inc. Because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

35.  In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime under investigation, including but not limited to, undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in an office filing cabinet to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with Snapchat Chats, including pictures and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to

9

capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

## CONCLUSION

36.     I understand that no warrant shall issue, but upon probable cause and particularly describing the place to be searched and the things to be seized. Based on the information above, I submit that there is probable cause to believe there is evidence of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), associated with the Snapchat account described in Attachment A. Specifically, there is probable cause to believe there are statements made by WARRIOR to MV and pictures and/or videos sent between WARRIOR and MV that shows evidence that a crime has been committed.

Respectfully submitted,

_____
Brittany Kilmer
Special Agent
Bureau of Indian Affairs

Subscribed and sworn to before me on February 24th, 2025.

_____
AMANDA MAXFIELD GREEN
United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Snapchat account "Itzdebb1", which is stored at the premises owned, maintained, controlled, and/or operated by Snap, Inc., a company headquartered in Santa Monica, California.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any messages, records, files, logs, photographs, videos, or other information that has been deleted but is still available to Snap, Inc., or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for the account listed in Attachment A for the time frame between January 1, 2024 and February 6, 2025.

 A. All stored communications and other files in Snap, Inc.'s possession (including account access information, event histories including dates and times, connection dates, times, and locations, connection IP information, message content, graphics files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from the Snapchat account identified in Attachment A;

 B. All subscriber information, including Snapchat username, vanity names, e-mail addresses, phone numbers, full name, physical address, and other personal identifiers;

 C. All information pertaining to the creation of the account, including date and time of creation, IP address used to create the account, and all subscriber information provided at the time the account was created;

 D. Timestamp and IP address of all account logins and logouts;

E. Logs of all messages and all files that have been created and Snaps sent or accessed via the Snapchat account identified in Attachment A, or that are controlled by user accounts associated with the Snapchat account;

F. The account name, vanity name, identifiers, and all available subscriber information for any other Snapchat account(s) associated with the Snapchat account listed in Attachment A;

G. All content, records, connection logs, and other information relating to communications sent from or received by the Snapchat account identified in Attachment A from January 1, 2024, to February 6, 2025, including but not limited to:

   1. Transmitter/Sender identifiers (i.e., addresses and/or IP address);
   2. Connection date and time;
   3. Method of Connection (telnet, ftp, http);
   4. Data transfer volume;
   5. Username associated with the connection, and other connection information, including the IP address of the source of the connection;
   6. All GPS location data and geographical data stored in relation to the account, including, but not limited to, location data derived from Snaps, Snap Map, Memories, Stories, logins, logouts, access records, and data pulled from the user's device.
   7. Account subscriber identification records;
   8. Other user accounts associated with, referenced in, or accessed by the Snapchat account identified in Attachment A;

13

9. Address books, contact lists, and "my friends";

10. Records of files or system attributes accessed, modified, or added by the user;

11. All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the Snapchat account identified in Attachment A, including, without limitation, subscriber names, user names, screen names or other identifiers, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, all information regarding the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced account, the content associated with or relating to postings, communications, and any other activities to or through the Snapchat account listed in Attachment A, whether such records or other evidence are in electronic or other form;

12. All records pertaining to communications between Snap, Inc. and the user(s) of the Snapchat account identified in Attachment A regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken;

13. The content of all messages and Snaps sent, received, saved, stored, or otherwise preserved.

Snap, Inc. is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, and/or contraband of violations of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and Receipt of Child Pornography, involving WARRIOR and MV, and including, for the account listed in Attachment A, information pertaining to the following matters:

a. Communication between WARRIOR and MV;

b. Communications between the Snapchat account identified in Attachment A and others from January 1, 2024 to February 6, 2025;

c. Evidence indicating the times, geographic locations, and electronic devices from which the Snapchat account listed in Attachment A was accessed and used, to determine the chronological and geographical context of the Snapchat account access, use, and events relating to the crimes under investigation and to the Snapchat account user;

d. Evidence indicating the Snapchat account user's state of mind as it relates to the crimes under investigation;

e. The identity of the person(s) who created or used the Snapchat account identified in Attachment A, including records that help reveal the whereabouts of such person(s);

As used above, the terms "documents," and "communications," refers to all content regardless of whether it is in the form of pictures, videos, audio records, text communications, or other medium, and whether in draft or complete form, and whether sent or received.

As used above, the terms "records" and "information" include all forms of data stored by Snap, Inc., including IP addresses, toll records, and account identifying information.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities, and/or contraband described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the BIA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.